## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN D. WEBSTER,** | : | **CIVIL NO. 1:CV-10-1780** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **KEVIN DePARLOS,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### M E M O R A N D U M

Plaintiff, Kevin D. Webster, an inmate currently incarcerated at the Lycoming County Prison ("LCP") in Williamsport, Pennsylvania, commenced this action *pro se* by filing a civil rights complaint pursuant to the provisions of 42 U.S.C. § 1983, as amended March 4, 2011.  (Doc. 23.)  Named as Defendants are the following LCP employees: Kevin DeParlos, Warden; Steve Blank, Deputy Warden; Rhonda Ulrich, Counselor; Officer Hill; and Brad Shoemaker, Deputy Warden.  In the amended complaint, Plaintiff sets forth a number of complaints about the conditions of LCP, including inadequate medical care, excessive force, a violation of his right to exercise his religion, denial of access to the courts, a violation of his right to privacy with respect to a strip search.

Presently before the court is a motion to dismiss the amended complaint, filed on behalf of Defendants.  (Doc. 24.)  For the reasons set forth below, the motion to dismiss will be granted.

### I.    Background

A. **Facts**

In the complaint, Webster provides the following factual background with respect to his claims.  The court notes that for purposes of disposition of the instant motion to dismiss, the properly-pleaded factual allegations contained in the complaint will be accepted as true and viewed in a light most favorable to Webster.

Webster asserts two Eighth Amendment violations based on inadequate medical care.  First, he alleges that on January 30, 2010, he acquired a staph infection as a result of poor and unsafe screening procedures, and was told that this bacterial infection could threaten his life if found in his bloodline.  (Doc. 23 at 2, 5.)  However, LCP medical staff informed him that he need not be tested, and his requests to an LCP doctor for testing went unanswered.  (*Id.*)  Second, he alleges that on February 14, 2010, he fell off the top bunk, injuring his back and ankle, but was never provided treatment.  (*Id.* at 3.)  In connection with this claim, Webster alleges that he fell off the bunk because LCP does not provide ladders for the bunk beds in the maximum security section of the prison.  (*Id.*)  Webster fails to allege any personal involvement by any of the named Defendants with respect to these claims.

Webster also asserts two Eighth Amendment violations based on excessive use of force.  First, he alleges that on March 11, 2010, Officer Hill kicked a door into his face, causing his jaw to break.  (*Id.* at 2.)  When he asked Officer Hill to be seen by a medical provider, Officer Hill denied his request.  (*Id.*)  Second, he alleges that on

December 17, 2010, he was assaulted by two inmates in LCP's disciplinary segregation unit after his December 3, 2010 request for a separation from one of those inmates, an inmate Blackman, was ignored. (*Id.* at 3.) Webster claims that he was placed in segregation with inmate Blackman in retaliation for seeking declarations in support of the instant civil rights complaint. (*Id.* at 5.) He does not allege personal involvement by any of the named Defendants with respect to the decision to house him with inmate Blackman, but claims that Defendant Shoemaker was aware of his request for a separation. (*Id.*)

In the amended complaint, Webster also asserts that Defendants Ulrich, Blank, and DeParlos have denied him the right to attend religious services. (*Id.* at 5.) Specifically as to Defendant Ulrich, Webster alleges that she denied him the opportunity to attend religious services for a consecutive period of six to eight weeks. (*Id.* at 2.)

Further, Webster alleges that his Sixth Amendment right to access to the courts was denied with respect to LCP's law library. Specifically, he claims that the law library does not have "all the things it is required to have," or an assistant to aid inmates. (*Id.* at 4.) Further, he claims that he was denied access to the law library on January 30, 2011. (*Id.*) He does not allege personal involvement by any of the named Defendants with respect to these allegations.

Finally, Webster asserts that his right to privacy was violated when he was strip

searched in front of other inmates on May 18, 2010 in connection with a "K-9 police dog cellular phone search." (*Id.* at 5.) He does not allege personal involvement by any of the named Defendants with respect to this allegation.

The court also notes that Webster has attached as exhibits to his amended complaint a number of declarations and inmate request slips that address several of the issues raised in his amended complaint. (*Id.* at 7-33; Doc. 28.)

### B.   Procedural History

Webster filed a complaint on August 27, 2010. (Doc. 1.) By order dated November 3, 2010, the court directed service of the complaint on all Defendants named therein.[1] (Doc. 13.) On December 7, 2010, Defendants filed a motion to dismiss the complaint or, in the alternative, for a more definite statement. (Doc. 16.) Webster subsequently filed a motion for leave to amend his complaint, (Doc. 20), which the court granted by order dated February 2, 2011, (Doc. 22). Webster's amended complaint was filed on March 4, 2011. (Doc. 23.) Defendants filed a motion to dismiss the amended complaint on March 17, 2011, (Doc. 24), followed by a brief in support on March 28, 2011, (Doc. 26). Webster filed a brief in opposition on May 11, 2011. (Doc. 31.) As Defendants have indicated that they will not be filing a reply brief, (*see* Doc. 32), the motion to dismiss is ripe for disposition.

---

[1] In that order, the court also ruled that any claims Webster made in his complaint on behalf of other inmates were stricken. (*See* Doc. 13.)

4

## II.    **Standard of Review - Motion to Dismiss**

Defendants have filed a motion that seeks dismissal of Webster's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for his failure to exhaust available administrative remedies, and, in the alternative, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action upon which relief can be granted.  As such, the court will set forth the standards under both Rules.

### A.    **Motion to Dismiss - Rule 12(b)(1) Standard**

Defendants are seeking dismissal of the amended complaint on the grounds that the court lacks subject matter jurisdiction over his claims.  *See* FED. R. CIV. P. 12(b)(1).  Federal courts are courts of limited jurisdiction and thus, are permitted to adjudicate cases and controversies only as allowed under Article III of the United States Constitution.  U.S. CONST. art. III, § 2.  A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the jurisdiction of one court to address the merits of the plaintiff's suit.  FED. R. CIV. P. 12(b)(1).  When considering a challenge to the court's jurisdiction pursuant to Rule 12(b)(1), no presumption of truthfulness attaches to the plaintiff's allegations, *see Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977), and the court may go beyond the four corners of the complaint and make factual findings which are decisive to the issue, relying on evidence such as affidavits, depositions and other testimony. *Employers Ins. of Wausau v. Crown Cork & Seal Co.*, 905 F.2d 42,

45 (3d Cir. 1990). The plaintiff bears the burden of persuading the court that it has

jurisdiction. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir.

1991); *Kligman v. I.R.S.*, 272 F. App'x 166, 168 (3d Cir. 2008).

### B.     Motion to Dismiss - 12(b)(6) Standard

Defendants are also seeking dismissal of the amended complaint on the grounds

that Webster has failed to state a claim upon which relief can be granted. *See* FED. R.

CIV. P. 12(b)(6). Among other requirements, a sound complaint must set forth "a

short and plain statement of the claim showing that the pleader is entitled to relief."

FED. R. CIV. P. 8(a)(2). This statement must "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Fair

notice" in Rule 8(a)(2) "depends on the type of case – some complaints will require at

least some factual allegations to make out a showing that the pleader is entitled to

relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quotation

omitted). "[A] situation may arise where, at some point, the factual detail in a

complaint is so undeveloped that it does not provide a defendant the type of notice of

claim which is contemplated by Rule 8." *Id.* A plaintiff must provide "more than

labels and conclusions" or "a formulaic recitation of the elements of a cause of action"

to show entitlement to relief. *Twombly*, 550 U.S. at 555; *accord, e.g., Phillips*, 515

F.3d at 231-32; *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (the court is

not "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation.") (quotations and citations omitted); *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (recognizing that the Rule 8 pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (quoting *Twombly*, 550 U.S. at 555).

A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). *Accord Phillips*, 515 F.3d at 233. If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Twombly*, 550 U.S. at 555, 570; *Phillips*, 515 F.3d at 234; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007); *Stevenson v. Carroll*, 495 F.3d 62, 66 (3d Cir. 2007); *see also Iqbal*, 129 S. Ct. at 1949 (explaining a claim has "facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters

extraneous to the pleadings, a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).  However, the court may not rely on other parts of the record in making its decision.  *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

When presented with a *pro se* complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003); *Youse v. Carlucci*, 867 F. Supp. 317, 318 (E.D. Pa. 1994).  Such a complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Finally, in the Third Circuit, a court must grant leave to amend before dismissing a civil rights complaint that is merely deficient.  *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility."  *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

## III.  **Discussion**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution and laws of the United States.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach.  *Martinez v. California*, 444 U.S. 277, 285 (1980).[2]  A prerequisite for a viable civil rights claim is that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  On its face, § 1983 creates no exceptions to the liability it imposes, nor does it speak of immunity for any individual who might deprive another of civil rights.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).  Nevertheless, it is well-settled that certain government officials possess immunity from § 1983 liability.  *Id.*

In their motion to dismiss, Defendants argue that Webster has failed to exhaust his administrative remedies with respect to all his claims and, in the alternative, has failed to state a claim against any Defendant upon which relief can be granted.  The court will address the issue of exhaustion first.

---

[2] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L. Ed. 2d. 128 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  *Martinez*, 444 U.S. at 285.

Pursuant to the Prison Litigation Reform Act ("PLRA"), before a prisoner may bring a civil rights action pursuant to § 1983, or any other federal law, he must exhaust all available administrative remedies.  *See* 42 U.S.C. § 1997e; *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  The exhaustion requirement of the PLRA is one of "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Id.*  The "filing [of] an untimely or otherwise procedurally defective administrative grievance or appeal" does not satisfy the PLRA's exhaustion requirement.  *Id.*  Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim.  *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004).  As the Court of Appeals for the Third Circuit explained, a procedural default rule "prevents an end-run around the exhaustion requirement."  *Id.* at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest."  *Id.*

Further, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).  The Supreme Court has clearly stated that "there is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."

11

*Jones v. Bock*, 549 U.S. 199, 212 (2007).  Additionally, the Third Circuit Court of Appeals has stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court."  *Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (not precedential).

In *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003), the Third Circuit Court of Appeals stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."  *See also Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002) (stating a prisoner does not have to allege in his complaint that he has exhausted administrative remedies).  The United States Supreme Court in a subsequent decision similarly held that because an inmate's failure to exhaust administrative remedies is an affirmative defense, the inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint.  *Jones*, 549 U.S. at 216.  Accordingly, it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).

The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the courts of confinement.  37 PA. CODE § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System.  After an attempt to resolve any problems informally, an inmate may submit a written grievance to the

facility's Grievance Coordinator for initial review.  An inmate may then appeal an

adverse decision of the Grievance Coordinator to the Superintendent of the institution,

and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and

Appeals.  *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining

Pennsylvania's grievance review process).

In the instant case, Defendants argue that the complaint should be dismissed

because Webster did not fully exhaust his administrative remedies with respect to any

of his claims.  In support, Defendants cite repeatedly to the inmate request slips

attached to the amended complaint to demonstrate that Webster either acknowledged

or utilized the grievance procedure at LCP, but did not properly complete the process.

(*See* Doc. 26 at 3-8.)  More specifically, Defendants contend that because Webster

either did not raise his claims or did not appeal them through the grievance procedure,

exhaustion was not completed prior to filing this action.  (*See id.*)   Webster counters

that he has attempted to use the grievance procedure at LCP, but the system is

insufficient and does not have a proper appeal procedure.  (Doc. 23 at 4-5.)  However,

in his amended complaint he asserts that he filed a grievance and appeal thereof

relating to the March 11, 2010 incident with Officer Hill, and filed a grievance

relating to the strip search.  (*Id*. at 5.)  As mentioned above, he also attaches a number

of exhibits to his complaint in support of his exhaustion efforts.  (Doc. 23 at 7-33.)

Further, on April 1, 2011, the court granted Webster's motion to add further exhibits

to his amended complaint. (Doc. 27.) Those exhibits were accepted for filing. (*See* Doc. 28.) Importantly, Webster offers no further specificity or detailed allegations regarding any grievances or appeals which do not appear in the record. Because the court can consider exhibits attached to the amended complaint in deciding this motion to dismiss, *see Pension Benefit Guar. Corp.*, 998 F.2d at 1196, the court will look to the amended complaint and exhibits attached thereto to address Defendants' arguments with respect to exhaustion of administrative remedies.

### A.    January 30, 2010 Staph Infection

As stated above, Webster alleges that on January 30, 2010, he acquired a staph infection, and his requests for treatment went unanswered. The amended complaint is silent as to exhaustion of this issue. However, the attached exhibits indicate the following with respect to exhaustion. On March 11, 2010, Webster filed a general grievance to an unspecified person at the institutional level, claiming that he got an infection from the showers at some prior point in time but he had not been diagnosed. (Doc. 23 at 10.) Further, on December 9, 2010, Webster submitted an inmate request slip to LCP's secretary, requesting the names of all inmates who had acquired a staph infection from December 2009 to December 2010. (*Id.* at 19.) The Deputy Warden responded that LCP does not release inmates' confidential medical records to other inmates. (*Id.*) Webster did not appeal this decision; however, on December 10, 2010, he submitted an inmate request slip to Deputy Warden Shoemaker requesting a copy

of his own medical records. (*Id.* at 20.) Further, on January 22, 2011, Webster submitted an inmate request slip to Nurse/Doctor requesting a test for a staph infection. (*Id.* at 30.)

Based on this record, Defendants contend that Webster has failed to fully exhaust his administrative remedies with respect to this claim. As it is clear that Webster filed only inmate request slips and did not appeal any decisions made thereto, the court agrees with Defendants that this issue has not been fully exhausted.[3] Thus, this claim will be dismissed for failure to exhaust administrative remedies.

### B.    February 14, 2010 Fall from Top Bunk

As stated above, Webster alleges that on February 14, 2010, he fell off the top bunk due to the lack of a ladder and injured himself, but was never provided treatment. The amended complaint is silent as to exhaustion of this issue. However, the attached exhibits indicate the following with respect to exhaustion. On March 11, 2010, Webster filed a general grievance to an unspecified person at the institutional level, requesting ladders for the top bunks of his unit. (Doc. 23 at 9.) There is no mention of a fall from his bunk or any injury on February 14, 2010. (*See id.*) Further, there are no inmate request slips or appeals attached to the complaint that reference the alleged incident.

---

[3] Any assertion here on Webster's part that there is no appeal procedure at LCP and therefore exhaustion should be excused is belied by his very own assertion that he appealed the grievance decision related to the March 11, 2010 incident with Officer Hill. (*See* Doc. 23 at 5.)

Based on this record, Defendants contend that Webster has failed to exhaust his administrative remedies with respect to this claim.  As it is clear that Webster did not put LCP prison officials on any notice whatsoever of the alleged February 14, 2010 fall, the court agrees with Defendants that this issue has not been fully exhausted.[4] Thus, this claim will be dismissed for failure to exhaust administrative remedies.

### C.    March 11, 2010 Incident with Officer Hill

As stated above, Webster alleges that on March 11, 2010, Officer Hill kicked a door into his face, causing his jaw to break, and his requests for treatment were denied.  In the amended complaint, Webster alleges that he filed a grievance regarding this incident, and an appeal when his initial grievance had been neglected.  (Doc. 23 at 5.)  Further, the attached exhibits indicate the following with respect to exhaustion. On March 11, 2010, Webster filed a general grievance to an unspecified person at the institutional level, indicating that on that date Officer Hill kicked a door while Webster's face was on it.  (*Id.* at 7.)  This grievance mentions no injury.  (*See id.*) Further, on December 14, 2010, Webster filed an inmate request slip to the nurse, requesting an x-ray of his jawbone "for my civil lawsuit."  (*Id.* at 18.)  In addition, Webster's supplemental exhibits contain an undated grievance relating to this incident with Officer Hill.  (Doc. 28 at 31.)  The response authored by a Lt. William

---

[4] Any assertion here on Webster's part that the LCP grievance procedure is insufficient to address his February 14, 2010 fall is belied by the fact that he clearly has submitted inmate request slips raising other issues.  (*See* Doc. 23 at 7-33.)

Heggenstaller and Sgt. Harry Entz states:

> After reading your grievance and speaking to you, we feel you do not
> have a valid complaint.  1st you claimed the incident happened on March
> 11[, 2010] but you waited until April 01[, 2010] to file your grievance.
> 2nd you told Lt. Heggenstaller and Sgt. Entz, "I only filed the grievance
> because I wanted to see the nurse and no one would let me."

(*Id*.)  Below this response, Webster appears to have appealed the response, stating that

he had requested a grievance, but never got the form, and was deprived from seeing a

nurse or doctor.  (*Id*.)  There is no indication of an appeal to any other level of

administration.

Based on this record, Defendants contend that Webster has failed to fully

exhaust his administrative remedies with respect to this claim.  As it is clear that

Webster filed grievances and an appeal on the institutional level only, the court agrees

with Defendants that this issue has not been fully exhausted.  Thus, this claim will be

dismissed for failure to exhaust administrative remedies.

### D.    December 17, 2010 Incident with Inmate Blackman

As stated above, Webster alleges that on December 17, 2010, he was assaulted

by an inmate Blackman and another inmate in the segregation unit, despite seeking a

separation from inmate Blackman.  The amended complaint is silent as to exhaustion

of this issue.  However, the attached exhibits indicate the following with respect to

exhaustion.  On December 1, 2010, Webster submitted an inmate request slip to

Warden DeParlos, requesting a separation from an inmate Blackwell.[5] (Doc. 23 at 21.) Further, on December 3, 2010, he submitted an inmate request slip to Deputy Warden Shoemaker, again requesting a separation from an inmate Blackwell. (*Id*. at 17.) On December 27, 2010, Webster submitted an inmate request slip to Warden DeParlos, informing the Warden that he had been assaulted by an inmate Blackwell on December 17, 2010, after his request for a separation was denied. (*Id*. at 25.) Finally, on January 30, 2011, Webster submitted an inmate request slip to Counselor Ulrich in which he mentioned "getting brutally assaulted on 12-17-10." (*Id*. at 16.) However, there does not appear to be a grievance related to this statement.

Based on this record, Defendants contend that Webster has failed to fully exhaust his administrative remedies with respect to this claim. As it is clear that Webster filed only inmate request slips and did not appeal any decisions made thereto, the court agrees with Defendants that this issue has not been fully exhausted.[6] Thus, this claim will be dismissed for failure to exhaust administrative remedies.

### E.   Attendance at Religious Services

As stated above, Webster alleges that he has been denied the right to attend religious services over a consecutive period of six to eight weeks. The amended complaint is silent as to exhaustion of this issue. However, the attached exhibits

---

[5] It is unclear whether inmate Blackwell is the inmate Blackman who Webster references in his amended complaint.

[6] *See supra* note 3, at 14.

indicate the following with respect to exhaustion.  On March 11, 2010, Webster filed a general grievance to an unspecified person at the institutional level, stating, "The Right to Practice Religion.  The First & Fourteenth Amendment protects against all types of violations on religious freedom & activities of prisoner in jail." (Doc. 23 at 10.)  There does not appear to be a grievance related to this statement.  Further, on February 7, 2011, Webster submitted an inmate request slip to the LCP Chaplain, inquiring, "Why are people constantly being denied religious services?" (*Id.* at 27.)

Based on this record, Defendants contend that Webster has failed to fully exhaust his administrative remedies with respect to this claim.  As it is clear that Webster filed only inmate request slips and did not appeal any decisions made thereto, the court agrees with Defendants that this issue has not been fully exhausted.[7]  Thus, this claim will be dismissed for failure to exhaust administrative remedies.

F.   **Access to the Courts**

As stated above, Webster alleges that his right to access to the courts was denied with respect to LCP's law library.  The amended complaint is silent as to exhaustion of this issue.  However, the attached exhibits indicate the following with respect to exhaustion.  On December 26, 2010, Webster submitted an inmate request slip to Deputy Warden Shoemaker, stating, "not have I been able to use the law library to respond to my civil action!" (Doc. 23 at 22.)  On December 27, 2010, he submitted

---

[7] *See supra* note 3, at 14.

another inmate request slip to Deputy Warden Shoemaker containing the same statement.  (*Id.* at 23.)  Also on December 27, 2010, Webster submitted an inmate request slip to Warden DeParlos, stating, "I've been being denied law library."  (*Id.* at 24.)  On January 30, 2011, he submitted an inmate request slip to Counselor Ulrich, stating that he had been denied law library time.  (*Id.* at 16.)  Finally, on January 12, 2011, he submitted an inmate request slip to the law library, stating, "The law library is missing some things!"  (*Id.* at 32.)

Based on this record, Defendants contend that Webster has failed to fully exhaust his administrative remedies with respect to this claim.  As it is clear that Webster filed only inmate request slips and did not appeal any decisions made thereto, the court agrees with Defendants that this issue has not been fully exhausted.[8]  Thus, this claim will be dismissed for failure to exhaust administrative remedies.

### G.   May 18, 2010 Strip Search

As stated above, Webster alleges that on May 18, 2010, his right to privacy was violated when he was strip searched in front of other inmates.  In the amended complaint, Webster asserts that he filed a grievance regarding this issue, but did not appeal any decision on that grievance.  (Doc. 23 at 5.)  A review of the exhibits attached to the amended complaint does not reveal that Webster filed a grievance on this issue at any level.  (*See id.* at 7-33.)

---

[8] *See supra* note 3, at 14.

Based on this record, Defendants contend that Webster has failed to fully exhaust his administrative remedies with respect to this claim.  Based on Webster's assertions and the exhibits attached to the amended complaint, it is clear that Webster may have only filed a grievance at the institutional level, if at all, and did not appeal any decisions made thereto.  Thus, the court agrees with Defendants that this issue has not been fully exhausted,[9] and therefore this claim will be dismissed for failure to exhaust administrative remedies.

## IV.   **Conclusion**

For the reasons set forth above, the motion to dismiss the amended complaint will be granted based on Webster's failure to exhaust his administrative remedies with respect to his claims.[10]  As a result, the amended complaint will be dismissed without prejudice.

An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  December 29, 2011.

---

[9] *See supra* note 3, at 14.

[10] As exhaustion of administrative remedies is a threshold issue, the court need not address Defendants' alternative argument with respect to the merits.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN D. WEBSTER,                   :          CIVIL NO. 1:CV-10-1780
                                    :
              Plaintiff             :          (Judge Rambo)
                                    :
        v.                          :
                                    :
KEVIN DePARLOS, *et al.*,           :
                                    :
        Defendants                  :

## O R D E R

In accordance with the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) The motion to dismiss (Doc. 24) filed by Defendants is **GRANTED**, and

Plaintiff's amended complaint (Doc. 23) is dismissed without prejudice.

2) The stay of Plaintiff's "motion for extension of time and motion compelling

an order of the courts upon the defendants to produce disc. materials" (Doc. 37) is

**LIFTED**.  (*See* Doc. 39.)  Plaintiff's motion (Doc. 37) is **DEEMED MOOT**.

3) The Clerk of Court is directed to **CLOSE** this case.

                               s/Sylvia H. Rambo
                               SYLVIA H. RAMBO
                               United States District Judge

Dated:  December 29, 2011.